UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARC BARKER,

                Plaintiff,

-against-

DSR B. SMITH, SGT. J. OSINSKI, LT. LIMAYE, C.O. EKWEREKWU,

                Defendants.

No. 16-cv-76 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Plaintiff Marc Barker brings this action *pro se* against Defendants Deputy Superintendent of Reception Betsy Smith, Sergeant ("Sgt.") James Osinski, Lieutenant ("Lt.") Vishnu Limaye, and Correction Officer ("C.O.") George Ekwerekwu[1] (collectively, "Defendants"), pursuant to 42 U.S.C. § 1983. Before this court is Defendants' motion to dismiss.[2] For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/25/17

---

[1] Although Plaintiff identifies this Defendant as Elswerekwu, according to the Inmate Misbehavior Report appended to Plaintiff's Complaint and Defendants' Memorandum, this individual's last name is actually spelled "Ekwerekwu". (*See* Compl. at 36, 40, ECF No. 1; Def. Mem. in Support of Mot. to Dismiss ("Def. Mem."), at 1, ECF No. 22.) The Court will refer to this Defendant as C.O. Ekwerekwu, and directs the Clerk of Court to amend the case caption accordingly.

[2] Defendants' Memorandum indicates they do not move to dismiss with regard to Plaintiff's procedural due process claims against DSR Smith. (*See* Def. Mem. at 1.)

1

**BACKGROUND**

The following facts are drawn from Plaintiff's Complaint, ECF No. 2, and are accepted as true for the purpose of this motion.

The crux of Plaintiff's claim is that he was falsely accused of an assault that occurred at Downstate Correctional Facility and wrongfully placed in the SHU on June 9, 2015. (Compl. at 3.)

On June 9, 2015, Sgt. Osinski issued an Inmate Misbehavior Report ("IMR"), signed by C.O. Ekwerekwu, charging Plaintiff with violating Department of Corrections and Community Supervision ("DOCCS") Rules 100.10 and 104.11, which prohibit assaults upon inmates and violent conduct, respectively. (*See* Compl. at 36; Def. Mem. at 1.) Specifically, the IMR indicates that on the same date, Plaintiff was serving as the housing unit porter while another inmate was in the shower, that they were both in the "25-30 tier" and that they were the only two inmates outside of their cells at this time. (Compl. at 36.) According to the report, while the other inmate was showering, the housing unit officer who was presumably C.O. Ekwerekwu, instructed Plaintiff to pick up supplies from the east lobby, and observed him leaving tier 25-30 to do so. (*Id*.) According to C.O. Ekwerekwu, approximately one minute later, the other inmate came from tier 25-30 asking where the porter (Plaintiff) went. (*Id*.) C.O. Ekwerekwu observed a two-and-a-half-inch laceration on the left side of the inmate victim's face, and noted that the inmate victim was bleeding. (*Id*. at 36-38.)

Sgt. Osinski was notified, and questioned Plaintiff about the incident in the east lobby (*see id*. at 8, 37.) Plaintiff told Sgt. Osinski that he "didn't have a problem with anyone on the date of 6.9.15." (*Id*. at 8.) Sgt. Osinski also observed the inmate victim and determined that the injury sustained was consistent with a "cutting instrument." (*Id*. at 38.) Both inmates' cells were searched, along with common areas of their Housing Unit 2-B, and no weapon or cutting

instruments were found. (*Id*.) Nonetheless, it was determined that Plaintiff was responsible for the assault, and Lt. Limaye approved Plaintiff's transfer to the SHU on the same date as the incident (the "Incident"). (*Id*. 8, 38.) Plaintiff contends that Sgt. Osinski wrote a false misbehavior report to "assist/cover up" for C.O. Ekwerekwu's failure to properly monitor his assigned post, the housing unit where the assault occurred. (*Id*. at 4.)

From June 25, 2015 through July 13, 2015, a Superintendent Hearing was held by DSR Smith regarding the Incident. (*Id*. at 23.) At the conclusion of the hearing DSR Smith found Plaintiff guilty of violating DOCCS Sections 100.10 and 104.11. (*Id*.) In her report on the disposition rendered, DSR Smith indicated that she relied upon: the misbehavior report, which indicated Plaintiff was in the housing unit and the relevant tier at the time of the incident; Plaintiff's own testimony that he was in the tier while the victim inmate was in the shower; C.O. Ekwerekwu's testimony about the timeframe of the incident; testimony from officers and inmates that all other cell doors were locked; and the victim inmate's testimony that he was in the shower in tier 25-30 when he believes he was cut. (*Id*. at 25.) As to the reasons for her disposition, DSR Smith noted she considered Plaintiff's prior institutional history and that prior sanctions and restrictions had failed to deter him. (*Id*.) Plaintiff was sentenced to 270 days in the SHU, beginning on June 9, 2015, loss of various privileges, and loss of "good time" for six months. (*Id*. at 23.) Plaintiff appealed DSR Smith's determination to the Commissioner, and obtained a reversal on September 15, 2015. (*Id*. at 22.) However, Plaintiff was not released from the SHU until October 6, 2015. (*Id*. at 12.)

## STANDARD ON A MOTION TO DISMISS

Under Rule 12(b)(6), the inquiry is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord*

3

*Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. To survive a motion to dismiss, a complaint must supply "factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id*. at 662. A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

Furthermore, with regard to *pro se* Plaintiffs, the Court must "construe [ ] [the] [Complaint] liberally and interpret[ ] [it] to raise the strongest arguments that [it] suggest[s]." *Martinez*, 164 F. Supp. 3d at 508 (quoting *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013)). Yet, "the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law." *Id.* (quoting *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013), and citing *Caidor v. Onondaga Cty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them.")).

## DISCUSSION

### I. Allegations as to the Misbehavior Report

Plaintiff asserts that Sgt. Osinski wrote a false misbehavior report to assist or "cover up" for C.O. Ekwerekwu's failure to properly monitor the housing unit where the assault occurred. (Compl. at 4.) Defendant contends that Plaintiff has failed to exhaust his administrative remedies under the Prisoner Litigation Reform Act ("PLRA") prior to bringing this action, and that Plaintiff's claims as to the false misbehavior report must therefore be dismissed.

The PLRA bars prisoners from bringing suit in federal court regarding their confinement "until such administrative remedies as are available are exhausted." *Hicks v. Adams*, 16-509 (PR), 2017 WL 2628874, at *1 (2d Cir. June 19, 2017) (summ. order) (citing 42 U.S.C. §1997e(a)). "The PLRA's exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Johnson v. Annucci*, 15-CV-3754 (NSR), 2016 WL 3847745, at *3 (S.D.N.Y. July 7, 2016) (citing *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002))).

The PLRA's grievance process requires an inmate of a New York State facility to exhaust his administrative remedies through a three-tiered Inmate Grievance Program ("IGP") pursuant to 7 N.Y.C.R.R. § 701.5. *See Johnson v. Fraizer*, 16-CV-6096 (CJS), 2016 WL 7012961, at *3 (W.D.N.Y. Dec. 1, 2016).

> DOC[C]S' Inmate Grievance Program ("IGP") has a regular three-tiered process for adjudicating inmate complaints: (1) the prisoner files a grievance with the Inmate Grievance Resolution Committee ("IGRC"), (2) the prisoner may appeal an adverse decision by the IGRC to the superintendent of the facility, and (3) the prisoner then may appeal an adverse decision by the superintendent to the Central Officer Review Committee ("CORC")

*Id.* (citing *Quezada v. Ercole*, 09-CV-2832 (DLC), 2011 WL 3251811, at *4 (S.D.N.Y. July 29, 2011) (citing *Espinal v. Goord*, 554 F.3d 216, 224 (2d Cir. 2009))); *see Khalild v. Reda*, 00-CV-7691 (LAK) (GWG), 2003 WL 42145, at *3 (S.D.N.Y. Jan. 23, 2003) ("An inmate has not exhausted his administrative remedies until he goes through all three levels of the grievance procedure.") (internal quotation marks and citation omitted).

"[F]ailure to exhaust is an affirmative defense under the PLRA" and, as such, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Roland v. Smith*, 907 F. Supp. 2d 385, 388 (S.D.N.Y. 2012) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)). Instead, defendants bear the burden of demonstrating that the plaintiff's claim is not exhausted. *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009). However, "a district court … may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." *Williams v. Correction Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016); *see also Lee v. O'Harer*, 13-CV-1022, 2014 WL 7343997 (TJM) (ATB), at *3 (N.D.N.Y. Dec. 23, 2014) ("Dismissal under Rule 12(b)(6) for failure to exhaust is appropriate if such failure is evidenced on the face of the complaint and incorporated documents.").

According to the Complaint, Plaintiff did utilize the IGP, but did so to challenge the way in which the Superintendent Hearing was conducted, and the ultimate determination. (*See* Compl. at 16.) ("Which claim(s) in this complaint did you grieve?" "The manner in which the tier hearing was being conducted.") Plaintiff was told that this issue could not be pursued through the grievance process, and later appealed the outcome of the hearing. (*Id.*) Though a disciplinary appeal is sufficient to exhaust a claim that Plaintiff was deprived of due process at a disciplinary hearing, "allegations of staff misconduct related to the incidents giving rise to the discipline must

6

be grieved." *Scott v. Gardner*, 287 F. Supp. 2d 477, 489 (S.D.N.Y. 2003), *on reconsideration in part*, 344 F. Supp. 2d 421 (S.D.N.Y. 2004), *and on reconsideration in part*, 2005 WL 984117 (S.D.N.Y. Apr. 28, 2005); *see Kimbrough v. Fischer*, 13-CV-100 (FJS) (TWD), 2014 WL 12684106, at *6 (N.D.N.Y. Sept. 29, 2014), *report and recommendation adopted*, 2016 WL 660919 (N.D.N.Y. Feb. 18, 2016) ("An inmate 'cannot satisfy the PLRA's exhaustion requirement as to grievable matters that do not directly relate to the conduct of a hearing simply by alluding to them in his administrative appeal of the hearing decision. For example, if at the hearing the inmate asserts … allegations of misconduct by the correction officers involved in the underlying events, the inmate cannot adequately exhaust his remedies for PLRA purposes through his administrative appeal of the hearing decision; he must separately grieve the alleged misconduct of the officers'") (citing *Rosales v. Bennett*, 297 F. Supp. 2d 637, 639 (W.D.N.Y. 2004)); *Mateo v. Gundrum*, 10-CV-1103 (GLS) (TWD), 2013 WL 5464722, at *2, 4, 8 (N.D.N.Y. Sept. 30, 2013) (finding that plaintiff had not exhausted administrative remedies with respect to claim involving false misbehavior report where he had not filed a grievance as to that issue, even though in his disciplinary appeal he indicated he believed Defendant had written false report); *see also Mayo v. Lavis*, 16-1664 (PR), 2017 WL 1493680, at *2 (2d Cir. Apr. 26, 2017) (claims against defendants for writing false misbehavior report and providing false testimony at disciplinary hearing, even when construed as retaliation claim, barred for failure to exhaust through grievance process).

Plaintiff does not attempt to contradict Defendants' contentions, nor did he oppose Defendants' motion to dismiss. As such, the Court cannot assess, for instance, whether Plaintiff contends he attempted to appropriately grieve his claim concerning the allegedly false misbehavior report, and whether his administrative remedies were in fact "unavailable"[3] such that he should be

---

[3] To the extent that remedies are available, exhaustion is mandatory. However, where administrative remedies are not "available," failure to comply with the PLRA exhaustion requirement may be excused. *Williams v. Correction Officer*

7

excused from failing to exhaust these claims. As such, because Plaintiff failed to utilize the appropriate grievance process for his claims as to the Misbehavior Report prior to bringing suit, the Court must conclude that he has failed to exhaust available administrative remedies. *See Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016) ("mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion"). For these reasons, Plaintiff's claims against Osinski and Ekwerekwu concerning the allegedly false misbehavior report are dismissed without prejudice for renewal to the extent it is possible for Plaintiff to exhaust these claims, or alternatively, to the extent he can allege the administrative remedies were "unavailable" as described in footnote three.[4]

## II. Personal Involvement of Lt. Limaye

Similar to the misbehavior report, Plaintiff alleges that the Unusual Incident Report was also created as an attempt to conceal Defendants C.O. Ekwerekwu's and Sgt. Osinski's failure to perform their duties, and that the author concluded that Plaintiff committed the underlying offense without proper evidence, relying only upon C.O. Ekwerekwu's account. (*See* Compl. at 3, 6.) Plaintiff also appears to allege that this report was utilized at his hearing. (*See, e.g.*, *id*. at 6.)

---

*Priatno*, 829 F.3d 118, 123–24 (2d Cir. 2016). There are at least three circumstances under which such remedies are considered "unavailable." "First, an administrative remedy may be unavailable when it 'operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates.' Second, 'an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.' In other words, 'some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it.' Third, 'an administrative remedy may be unavailable 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Id*. (quoting *Ross v. Blake*, S. Ct. 1850, 1859-60 (2016); *but see id*. at 123 ("special circumstances" exception, permitting plaintiffs to file suit in federal court without first exhausting administrative remedies, abrogated).

[4] The Court notes that, as proof of Plaintiff's failure to exhaust, Defendants offer a declaration by Jeffrey Hale, Assistant Director of the Inmate Grievance Program at DOCCS, indicating there is no record that Plaintiff exhausted his claims as to the allegedly false misbehavior report. (*See* Decl. of Jeffrey Hale In Support of Def. Mot to Dismiss, at 2-3, ECF No. 23.) Defendants have also included a notice sent to Plaintiff, who is proceeding *pro se*, apprising him of his obligations in opposing a motion to dismiss, including the possibility that the Motion may be converted into one for summary judgment, as is required by Local Civil Rule 12.1. *Roland v. Smith*, 907 F. Supp. 2d 385, 389 (S.D.N.Y. 2012); (*see* ECF No. 25.) Because it is clear from the face of the Complaint that Plaintiff failed to exhaust his claims as to the false misbehavior report, the Court need not considered these documents.

According to the Unusual Incident Report appended to Plaintiff's Complaint, Limaye appears to be the author. (*Id*. at 37.) Thus, drawing all reasonable inferences in Plaintiff's favor, he appears to allege a claim against Limaye for authoring a false unusual incident report. Defendants do not address any potential claims against Limaye for allegedly authoring a false Unusual Incident Report to protect Ekwereku and Osinski.

Plaintiff also alleges that Limaye approved Plaintiff's initial confinement in the SHU "with no reliable evidence." (*Id*. at 8.) Defendants counter that – to the extent Plaintiff asserts a claim against Limaye for the role he played in placing Plaintiff in the SHU – Limaye can only be held responsible for the time period between June 9, 2016, when Plaintiff was first placed in the SHU prior to Plaintiff's Superintendent Hearing, and July 13, 2015, the date DSR Smith issued her determination. (*see* Def. Mem. at 12.) Defendants also assert that Plaintiff has failed to establish personal involvement of Lt. Limaye because he fails to allege that: Limaye authored or endorsed the allegedly false Misbehavior Report; testified at Plaintiff's hearing; contributed in any way to the finding of Plaintiff's guilt, or that Limaye's actions were the "proximate cause" of Plaintiff's injury. (*See* Def. Mem. at 11-12 ("Rather, Plaintiff's injuries were proximately caused by (1) the IMR; and (2) the disciplinary hearing disposition").)

To the extent Plaintiff does in fact intend to assert a claim against Limaye for authoring a false Unusual Incident Report, the Court need not address the legal sufficiency of this claim. Similar to Plaintiff's allegations with regard to the false Misbehavior Report, Plaintiff must also exhaust his administrative remedies with regard to any claim against Limaye for authoring the Unusual Incident Report prior to filing a claim in federal court. *See McClenton v. Menifee*, 05-CV-2844 (JGK), 2006 WL 2474872, at *8 (S.D.N.Y. Aug. 22, 2006) (indicating claim against author of alleged false incident report must also be exhausted through administrative grievance

9

process). Thus, for the same reasons the Court finds that Plaintiff failed to exhaust his administrative remedies as to his claims regarding the false Misbehavior Report, the Court must also find that Plaintiff has failed to exhaust his administrative remedies against Limaye for drafting the allegedly false Unusual Incident Report. As such, this claim is also dismissed without prejudice.

Assuming Plaintiff does intend to assert a claim against Limaye for placing Plaintiff in the SHU for the 34-day period after the Incident and prior to his Superintendent Hearing, precedent in this Circuit dictates that such a brief period of confinement does not implicate a liberty interest and cannot support a due process claim. *Murray v. Arquitt*, 10-CV-1440 (NAM) (CFH), 2014 WL 4676569, at *14 (N.D.N.Y. Sept. 18, 2014) ("cases in this Circuit typically affirm dismissal of due process claims where the period of time spent in SHU was short-e.g. 30 days-and there was no indication [of] ... unusual conditions"). Nor does Plaintiff appear to allege he experienced any "unusual conditions" during this thirty-four day confinement period. As such, any claims asserted against Limaye for Plaintiff's initial placement in the SHU is also dismissed.

### III. Qualified Immunity

Defendants also assert that they are entitled to qualified immunity: with regard to Plaintiff's claims against Osinski and Ekwerekwu concerning the false misbehavior report, and against Limaye concerning the initial 34 day confinement prior to the Superintendent Hearing. Because the Court finds that Plaintiff's failure to exhaust his administrative remedies is dispositive of his claims regarding the allegedly false reports, the Court need not address this argument. As to the allegation against Limaye for Plaintiff's initial SHU confinement, because Plaintiff has not plausibly alleged conduct supporting a due process claim, the Court need not address whether Limaye would be entitled be entitled to qualified immunity. *See Johnson v. Perry*, 859 F.3d 156,

169 (2d Cir. 2017) ("The doctrine of '[q]ualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.'") (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012); *McClenton v. Menifee*, 05-CIV-2844 (JGK), 2006 WL 2474872, at *15 (S.D.N.Y. Aug. 22, 2006) ("First, the Court must undertake a threshold inquiry into whether the plaintiff's allegations, if true, establish a constitutional violation … If the plaintiff's allegations do not state a constitutional claim, "there is no necessity for further inquiries concerning qualified immunity.") (internal quotation marks and citations omitted).

## IV. False Imprisonment

Defendants argue that Plaintiff has failed to state a claim for false imprisonment with regard to his sentence to the SHU. (*See* Def. Mem. at 19-20.) "A prisoner can succeed on a false imprisonment claim only where he has sufficiently pleaded that he had been subjected to punitive segregation for no legitimate reason and without the rudimentary protections of due process." *Jackson v. N.Y. Dep't of Corr'n Servs.*, 994 F.Supp. 219, 224 (S.D.N.Y. 1998).

Plaintiff has adequately alleged that he was subjected to punitive segregation in the form of approximately[5] 120 days of confinement in the SHU. *Banks v. Pinker*, 10-CV-4139 (RMB), 2012 WL 1066799, at *3 (S.D.N.Y. Mar. 22, 2012) (allegation Plaintiff spent 120 days in SHU can suffice to adequately allege punitive segregation); *Koehl v. Bernstein*, 10-CV-3808 (GWG), 2011 WL 2436817, at *7 (S.D.N.Y. June 17, 2011) (that plaintiff "spent 120 days in the SHU [can, under certain circumstances,] constitute[] an atypical and significant hardship").

---

[5] (*See* Compl. at 11-12 (indicating Plaintiff was held for 101 days, plus an additional 19 days, from September 17, 2015 through October 6, 2015); *id*. at 13 (indicating Plaintiff held for "121 days").)

11

Construing the Complaint liberally, Plaintiff also adequately alleges that he was denied rudimentary protections of due process.[6] These protections include "advance written notice ...; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; [and] a statement of the disposition including the evidence relied upon and the reasons for the disciplinary actions taken." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004). Given Plaintiff alleges that DSR Smith conducted the Superintendent Hearing in an unfair and partial manner, that she ignored documents supporting Plaintiff's contention of his innocence at the hearing along with other inconsistencies in the evidence presented, and found him guilty based upon improper considerations, among other relevant allegations, and considering Defendants make no argument to contrary, the Court finds Plaintiff has plausibly alleged that he was denied the basic protections of due process.

Construing the Complaint liberally, Plaintiff also plausibly alleges that he was subjected to punitive segregation without "legitimate reason." In response, to demonstrate that his SHU confinement was in fact based upon a legitimate reason, Defendants point to Plaintiff's admission that he was serving as unit porter and was thus outside of his cell when another inmate was assaulted, as well as language in DSR Smith's Disposition Report attached to the Complaint, indicating other inmates and officers testified that "the other cell doors were locked."[7] The Court must accept as true Plaintiff's contentions that he was serving as a unit porter at the time of the incident and presumably had permission to be outside of his cell; and that DSR Smith ignored documents and inconsistencies in the evidence presented at the hearing which supported Plaintiff's

---

[6] Defendants presumably concede that Plaintiff's assertions are sufficient to form the basis of a plausible allegation that he was subjected to punitive segregation without the rudimentary elements of due process, as they argue only that Plaintiff fails to allege he was placed in the SHU for "no legitimate reason". (*See* Def. Mem. at 20.)

[7] Defendants' Memorandum contends that the Disposition Report, ECF No. 2, at 25, reflects that the officers and inmates testified that "no other inmate was out of their cell." This appears to be an inference based upon testimony of officers and inmates to the effect that "other cell doors were locked" (*see* ECF No. 2 at 25).

claims of innocence, stated she was aware of the "officers not being very truthful," and, although noting in her report that there was testimony that other cell doors were locked during the Iincident, did not indicate whether and how she ultimately drew the conclusion that Plaintiff and the victim were the only two inmates outside of their cell, (*see, e.g.*, Compl. at 8-9, 25) (though the Court notes this was indicated in the allegedly false Misbehavior Report). Based upon these allegations, and the fact that Defendants cite no controlling authority indicating a conclusion to the contrary is more appropriate at this time, the Court finds that Plaintiff has plausibly alleged his false imprisonment claim as to his confinement in the SHU as a result of the disciplinary hearing where he was denied the basic protections of due process.

## V. Plaintiff's Claims of Property Loss

Defendants also contend that Plaintiff fails to state a plausible claim for loss of personal property when Plaintiff was transferred between facilities. (*See* Def. Mem. at 21 (citing to "SOC ¶ 28" or Compl. at 12.); *see also* Compl. at 9 (alleging loss of property due to "transfer[s] from SHU to SHU (movement of SHU facility(s) [sic]").)

To the extent Plaintiff alleges a claim for property loss "that claim is subject to ready dismissal since it is well-established that New York provides an adequate post-deprivation remedy for such losses." *Thompson v. LaClair*, 08-CV-0037 (FJS) (DEP), 2009 WL 2762164, at *8 (N.D.N.Y. Aug. 25, 2009) (citing *Koehl v. Dalsheim,* 85 F.3d 86, 88 (2d Cir. 1996)). This remedy is provided through Section 9 of the New York Court of Claims Act, which permits an inmate such as Plaintiff to pursue his claim for deprivation of property against the State in the Court of Claims. *Key v. Tanoury*, 05-CV-10461 (SHS), 2006 WL 3208548, at *2 (S.D.N.Y. Nov. 3, 2006) (citing *DeMaio v. Mann*, 877 F. Supp. 89, 95 (N.D.N.Y. 1995), *aff'd mem.*, 122 F.3d 1055 (2d Cir. 1995)).

Although Plaintiff's claim could perhaps survive if he alleged he was denied access to an adequate post-deprivation remedy, he does not do so. *Montanez v. Lee*, No. 14-CV-3205 (NSR), 2016 WL 3866594, at *7 (S.D.N.Y. July 12, 2016); *Bridgewater v. Taylor*, 698 F. Supp. 2d 351, 361 (S.D.N.Y. 2010) ("Deprivation of an inmate's property by a state actor may constitute a violation of the inmate's due process rights … but only if a meaningful post-deprivation remedy is not available … New York State, however, provides inmates with a post-deprivation remedy through the Court of Claims.") (citing *Hudson v. Palmer*, 468 U.S. 517, 533, 104 (1984) (additional citations omitted)). Because adequate state law remedies exist, and Plaintiff does not allege he has been deprived of these remedies, he has not been deprived of property without due process of law and cannot state a claim for relief on these grounds. For these reasons, Plaintiff's allegations regarding the loss of his property do not give rise to a plausible claim for relief, and the Court must dismiss Plaintiff's claims for property loss.

## VI. Plaintiff's State Law Claims

Defendants argue that any claim for damages arising out of state law negligence[8] and false imprisonment claims must also be dismissed as barred by New York Corrections Law § 24. (Def. Mem. at 21.)

Under § 24, a plaintiff cannot assert a civil action against correctional officers and employees of the Department of Correctional Services, in their individual capacities, "for damages arising out of any act done or the failure to perform any act within the scope of the employment

---

[8] Defendants also contend that, to the extent Plaintiff asserts a negligence claim under 42 U.S.C. § 1983, presumably for the loss of his property, these claims must also be dismissed. (*See* Def. Mem. at 21 n.5.) This Court agrees. *See New Holland Vill. Condo. v. DeStaso Enterprises Ltd.*, 139 F. Supp. 2d 499, 503 (S.D.N.Y. 2001), *aff'd sub nom.*, 29 F. App'x 760 (2d Cir. 2002) ("negligence—even gross negligence, or negligence that results in grievous injury—cannot be disguised as constitutional claims and brought in a federal court under 42 U.S.C. § 1983. Mere negligence by a state official does not deprive an individual of life, liberty or property without due process of law … This is true even if the state's negligence results in the loss of life or property.").

14

and in the discharge of the duties by such officer or employee." N.Y. Correct. L. § 24. New York Corrections Law § 24 precludes "'the assertion of claims against corrections officers [in their personal capacities] in any court, including the federal courts,' by designating the New York State Court of Claims as the only available venue to bring a claim for damages arising out the acts committed by corrections officers within the scope of their employment." *Rucano v. Koenigsmann*, 12-CV-00035 (MAD), 2014 WL 1292281, at *15 (N.D.N.Y. Mar. 31, 2014) (citing *Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996)); *Ramos v. Artuz*, 00-CV-0149, 2001 WL 840131, at *6 (S.D.N.Y. July 25, 2001) (concluding that § 24 barred inmate's state law claims for negligence against DOCCS employees in their individual capacities); *Francis v. Fiacco*, 15-CV-00901 (MAD) (ATB), 2016 WL 3448617, at *4 (N.D.N.Y. June 20, 2016) (barring pendent state claims, including state law false imprisonment claim, as precluded by New York Correction Law § 24).

Plaintiff does not appear to allege that Defendants acted outside of the scope of their employment. *See Francis*, 2016 WL 3448617, at *4. As such, these claims must be pursued in the New York Court of Claims, and the Court dismisses any state law negligence and false imprisonment claims.

## CONCLUSION

For the foregoing reasons, the Defendants' motion to dismiss is GRANTED in part and DENIED in part. Only Plaintiff's procedural due process and federal false imprisonment claims against DSR Smith remain. Defendants' Counsel is directed to submit a completed Scheduling Order to the Court (see attached). The Clerk of Court is directed to mail a copy of this Opinion to *pro se* Plaintiff at the address reflected on the docket, and to amend the caption to reflect that

Defendant Elswerekwu's surname is should be spelled "Ekwerekwu." The Clerk of Court is also respectfully directed to terminate the motion at ECF No. 21.

Dated: August 24th, 2017
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

UNITED STATES DISTRICT COURT  Rev. May 2014
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

                                          Plaintiff(s),                **CIVIL CASE DISCOVERY PLAN AND SCHEDULING ORDER**

- against -

                                       Defendant(s).    _____ CV _____ (NSR)

--------------------------------------------------------------x

       This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1. All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2. This case [is] [is not] to be tried to a jury.

3. Joinder of additional parties must be accomplished by _____.

4. Amended pleadings may be filed until _____. Any party seeking to amend its pleadings after that date must seek leave of court via motion.

5. Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6. First request for production of documents, if any, shall be served no later than _____.

7. Non-expert depositions shall be completed by _____.

    a. Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

    b. Depositions shall proceed concurrently.

    c. Whenever possible, unless counsel agree otherwise or the Court so orders,

non-party depositions shall follow party depositions.

8. Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9. Requests to Admit, if any, shall be served no later than _____.

10. Expert reports shall be served no later than _____.

11. Rebuttal expert reports shall be served no later than _____.

12. Expert depositions shall be completed by _____.

13. Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14. **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15. Any motions shall be filed in accordance with the Court's Individual Practices.

16. This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17. The Magistrate Judge assigned to this case is the Hon. _____.

18. If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19. The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)

SO ORDERED.

Dated: White Plains, New York
_____

_____
Nelson S. Román, U.S. District Judge